## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL OKRUCH<br><br>Plaintiff,<br><br>vs.<br><br>VERIZON PENNSYLVANIA, LLC<br><br>Defendant. | Case No. 1:24-cv-304<br><br>Hon. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Michael Okruch ("Plaintiff") moves the Court for entry of judgment in his favor against the Defendant and in support of such Complaint avers as follows:

## PARTIES, JURISDICTION AND VENUE

1.   This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to federal law specifically, the Americans with Disabilities Act ("ADA"). Moreover, this Court has jurisdiction over Plaintiff's state law claims to the extent that he pleads them pursuant to 28 U.S.C. §1367.

2.   Venue lies within the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

3.      Plaintiff brings this action against his former employer, Verizon Pennsylvania, LLC ("Verizon" or "Defendant"). Verizon is a Pennsylvania company located at 1701 Allegheny Avenue, Warren, Pennsylvania 16365.

4.      Plaintiff is a disabled adult male who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania and was employed by Verizon.

## UNDERLYING FACTS

5.      Plaintiff is a disabled adult male who worked for Verizon as a Cable Splicing Technician for $46.00 per hour from May 8, 2020, to July 21, 2023.

6.      Plaintiff had a serious accident at work on August 31, 2022, when he was knocked into a ditch (about 8 feet deep) while making repairs. The accident occurred as Okruch was in the entry trench instructing Verizon subcontracted (CT Utility – Oil City, PA) workers (two individuals) and a large pile of dirt and rock pushed him into the trench. Okruch broke multiple bones in his back and was life-flighted to an Erie, PA Hospital. The trench itself did not have any trench boxes, or any other safety measures. After the accident, his supervisor, Brad Peterson ("Peterson") began a concerted effort to harass and intimidate Okruch by isolating him and telling others that Okruch would not be returning to work due to his violation of company policies. These statements were made before any investigation regarding the incident had been undertaken.

7.    As noted, the accident resulted in significant injuries including but not limited to broken bones in Plaintiff's rib cage, a neck and back injury, as well as sleeplessness and mental distress due to nightmares about the accident and fear of death when he was life flighted from the scene of the accident and required treatment for several months. The major life activities that were impacted significantly were and are mobility, sleep, chronic pain, residual stiffness as well as anxiety and Post Traumatic Stress Disorder ("PTSD") which affects thinking and concentration. The Plaintiff sought workers compensation benefits and was approved for the same. The injuries of the Plaintiff have not been fully resolved to the present date, including physical and mental disabilities as noted above.

8.    Furthermore, the Plaintiff engaged in protected activity when he sought accommodations after the accident and hospitalization as well as medical leave during his rehabilitation and subsequent light duty assignments.

9.    Further, Plaintiff to this day still deals with stiffness in his neck and upper back pain. Once more, he continues experiencing vivid nightmares of the accident and sleeplessness due to periodic physical discomfort and because of his fears and anxieties for which he has received therapy from by Dr. Rita Boyojko at Kinzua Counseling. Dr. Boyoiko has diagnosed the Plaintiff with PTSD due to the harsh treatment he received after the accident by Peterson and Verizon.

10.    Plaintiff's anxiety was well-known to all his supervisors given the multiple communications he had with them during the course of the accident and rehabilitation as well as subsequent to that period while Plaintiff was on light duty as well as into the period before he was terminated.

11.    Once more, the Plaintiff insists that Peterson undermined him from the start as previously noted with his attempt to paint the Plaintiff as the one who violated policies before an investigation had even been conducted. This created a hostile work environment from the outset as Peterson isolated the Plaintiff, refused to talk to him, and upon information and belief, attempted to prevent others from assisting him after he returned to work.

12.    Furthermore, Verizon regarded Plaintiff as disabled and had records of his disability following the accident. Verizon's failure to prevent harassment and isolation of the Plaintiff post-accident as well as using the accident as a reason to terminate him demonstrates that Plaintiff's efforts to avail himself of protected class status due to his prior injuries and ongoing physical and mental disabilities, were the motivation behind Verizon's decision to terminate the Plaintiff.

13.    A subsequent investigation by OSHA resulted in fines for both the sub-contractor and Verizon. Furthermore, during the OSHA investigation, the Plaintiff had a duty to report the facts surrounding the incident causing his injury

during the subsequent investigation surrounding the accident and failure of Verizon or the subcontractors to keep the Plaintiff safe.

14.     Notably, subsequent Verizon investigations internally allowed the Plaintiff to return to work, with no disciplinary action.

15.     Further, as previously noted, the Plaintiff alleges that Peterson told James Bimber and Kermit Sherwood (Verizon employees) that the Plaintiff was going to be terminated for not following policy right after he was injured. Even before an investigation was commenced. This, also despite the fact that the Plaintiff had not been trained in certain areas of trench work and there can be no dispute that Verizon was found to have seriously violated OSHA standards and had not provided adequate safety protocols for the Plaintiff, or others.

16.     In or around May of 2023, an investigation was re-opened by Verizon corporate based on the Plaintiff's work-related accident. The Plaintiff participated in this investigation with his union present.

17.     In July 2023, the Plaintiff was accused of sabotage by Verizon, and he was subsequently suspended on July 7, 2023. The Plaintiff thereafter met with the company twice relating to these allegations.

18.     On July 21, 2023, the Plaintiff met with Verizon representatives again, but this time it was to terminate the Plaintiff based on Plaintiff's statements to OSHA regarding the accident and Verizon's failure to provide safety measures.

19.   At his termination, the only reason the Plaintiff was given for his termination was that he violated the Verizon code of conduct, yet no more details were provided. However, Plaintiff avers he was fired due to his workplace injuries, disabilities, and use of worker's compensation benefits as well as because of his reports to OSHA as was his duty to report and participate in the investigation.

20.   The Plaintiff subsequently filed an OSHA whistleblower complaint because he believed he was terminated due to his participation in the investigation, his reports of violations to OSHA and because of the OSHA fines levied on Verizon. Thereafter, the Plaintiff participated in an interview with OSHA authorities shortly after filing his complaint and the complaint is still pending. The Plaintiff also filed a grievance through his union, CWA Local 13000.

21.   Furthermore, Plaintiff filed his disability-based claims with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human relations commission ("PHRC") on October 11, 2023. A right to sue was issued on August 29, 2024, and it has been over one (1) year from the date of the filing meaning exhaustion has been accomplished at the PHRC as of October 11, 2024. Therefore, Plaintiff brings both federal and state claims herein. **Exhibit A**

22.   The Defendants' actions or inaction are of a continuing nature thus they fall under the doctrine of a continuing violation theory. Further, the Defendant created a period of antagonism from the time of the accident, and subsequent and

initial reports to OSHA, to the time of his termination when Verizon harassed, isolated, demeaned, refused to speak to or assist the Plaintiff in his working assignments and then re-opened investigations under the pretense of determining whether the Plaintiff violated code of conduct policies waiting to do it almost a year later in order to appear as not to be firing the Plaintiff due to his accident.

23.    Defendant is responsible/liable for the actions of its agents under a theory of *Respondeat Superior.*

## COUNT 1
## PHRA DISABILITY DISCRIMINATION

24.    Plaintiff incorporates herein the previous averments as if fully set forth.

25.    The Plaintiff is a qualified individual with a disability because of his injuries and medical conditions and Defendants' notice of the same. Furthermore, Plaintiff has a record of disability and/or was regarded as disabled by the Defendants.

26.    The PHRA prohibits discrimination in the workplace against employees who have, *inter alia*, availed themselves of protected class status in the workplace.

27.    Plaintiff was terminated because he had sought protected class status after a serious injury at work. Verizon fired him because of his protected status raising the issues of his injury and reports to OSHA of the same in May and July 2023.

**WHEREFORE**, Plaintiff prays this Honorable Court order all appropriate relief pursuant to the PHRA and applicable statutory remedies including but not limited to

monetary relief, including as applicable, compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 2
## PHRA DISABILITY-HOSTILE WORK ENVIRONMENT

28.    Plaintiff incorporates herein the previous averments as if fully set forth.

29.    The Plaintiff avers that he is a qualified individual with disabilities because of his injuries and medical conditions and Defendants' notice of the same. Additionally, Plaintiff is under care for his disabilities since he was diagnosed.

30.    The Plaintiff was subject to unwelcomed harassment after he sought disability accommodations in August 2022 and beyond.

31.    The harassment was sufficiently severe or pervasive altering the conditions of Plaintiff's employment and creating an abusive and hostile working environment because his direct supervisor and others ostracized and humiliated him as more fully described above and herein.

32.    Defendant knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining, and threatening him due to his conditions and for seeking leave for his disabilities.

33.    The fact that the Plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability for his claims.

**WHEREFORE**, Plaintiff prays this Honorable Court order all appropriate relief pursuant to the PHRA and applicable statutory remedies including but not limited to monetary relief, including as applicable, compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 3
## PHRA DISABILITY RETALIATION

34.    Plaintiff incorporates herein the previous averments as if fully set forth.

35.    The PHRA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace, or to have otherwise opposed practices made unlawful under the law.

36.    The Plaintiff's requests for an accommodation in the workplace constituted "protected activity" pursuant to state and federal law.

37.    Defendant retaliated against the Plaintiff on account of his protected activity when it disciplined him after he sought medical leave related to his disability and after he opposed the harassment and bullying described above and herein.

38.    Furthermore, Plaintiff avers the Defendant's purported basis to discipline him (e.g., failure to follow policy) is false and erroneous and a pretext for its underlying invidious reasons for the termination.

39.    As a result, the Plaintiff avers the Defendant retaliated against him on account of his protected activity by discharging him without justification.

**WHEREFORE**, Plaintiff prays this Honorable Court order all appropriate relief pursuant to the PHRA and applicable statutory remedies including but not limited to monetary relief, including as applicable, compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 4
## ADA DISABILITY DISCRIMINATION

40.    Plaintiff incorporates herein the previous averments as if fully set forth.

41.    The Plaintiff is a qualified individual with a disability because of his injuries and conditions and Defendants' notice of the same. Furthermore, the Plaintiff had a record of disability and/or was regarded as disabled by the Defendants.

42.    The ADA prohibits discrimination in the workplace against employees who have, *inter alia*, availed themselves of protected class status in the workplace.

43.    Plaintiff was terminated because he had sought protected class status after a serious injury at work. Verizon fired him because of his protected status raising the issues of his injury and reports to OSHA in May and July 2023.

**WHEREFORE**, Plaintiff prays this Honorable Court order all appropriate relief pursuant to the ADA and applicable statutory remedies including but not limited to monetary relief, including as applicable, compensatory damages including wage loss, pain and suffering, punitive relief, if, and as applicable, and Plaintiff seeks the recovery of all reasonable attorney's fees and costs of litigation.

## COUNT 5
## ADA DISABILITY-HOSTILE WORK ENVIRONMENT

44.    Plaintiff incorporates herein the previous averments as if fully set forth.

45.    The Plaintiff avers that he is a qualified individual with a disability because of his injuries and conditions and Defendants' notice of the same. Additionally, Plaintiff has been under a physician's care since he was diagnosed.

46.    The Plaintiff was subject to unwelcomed harassment after he sought disability accommodations in August 2022 and beyond.

47.    Further, the harassment was sufficiently severe or pervasive altering the conditions of Plaintiff's employment and creating an abusive and hostile working environment when his direct supervisor and others ostracized him and humiliated him as more fully described above and herein.

48.    Defendant knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining, and threatening him due to his conditions and for seeking leave for his disabilities.

49.    The fact that the Plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability for his claims.

**WHEREFORE**, Plaintiff prays this Honorable Court order all appropriate relief pursuant to the ADA and applicable statutory remedies including but not limited to monetary relief, including as applicable, compensatory damages including wage loss,

pain and suffering, punitive relief, if, and as applicable, and Plaintiff seeks the recovery of all reasonable attorney's fees and costs of litigation.

## COUNT 6
## ADA DISABILITY RETALIATION

50.    Plaintiff incorporates herein the previous averments as if fully set forth.

51.    The ADA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

52.    The Plaintiff's requests for an accommodation in the workplace constituted "protected activity" pursuant to state and federal law.

53.    Defendant retaliated against the Plaintiff on account of his protected activity when it disciplined him after he sought medical leave related to his disability and after he opposed the harassment and bullying described above and herein.

54.    Furthermore, Plaintiff avers that the Defendant's purported basis to discipline him (e.g., failure to follow policy) is false and erroneous and a pretext for underlying invidious reasons.

55.    As a result, the Plaintiff avers that the Defendant retaliated against him on account of his protected activity by threatening termination and discharging him without justification.

**WHEREFORE**, Plaintiff prays this Honorable Court order all appropriate relief pursuant to the ADA and applicable statutory remedies including but not limited to

monetary relief, including as applicable, compensatory damages including wage loss, pain and suffering, punitive relief, if, and as applicable, and Plaintiff seeks the recovery of all reasonable attorney's fees and costs of litigation.

**COUNT 7**
**VIOLATION OF PENNSYLVANIA PUBLIC POLICY**
Workers Compensation Retaliation and Wrongful Termination

56.  Plaintiff incorporates herein the previous averments as if fully set forth.

57.  It is a public policy of Pennsylvania to protect the public health, safety, and welfare of workers and to keep them safe and free from harm.

58. A public-policy exception to the at-will doctrine was recognized by the Pennsylvania Supreme Court in *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998), where the Court held that an at-will employee who alleges a claim of retaliatory discharge for filing a workers' compensation claim has stated a common law cause of action for which relief may be granted.

59.The Plaintiff sought assistance from his employer due to a workplace injury as more fully described above and herein.

60. His termination, in July 2023, evinced both a temporal proximity and pattern of antagonism as to the cause of his termination when Verizon raised the issues of Plaintiff's injuries again at that time and in the context of his reports to OSHA and allegation of violations of Verizon policy relating to the workplace accident.

61. The typical case involving wrongful discharge in violation of public policy is one where the "employee's termination is retaliatory and not grounded on a legitimate reason." *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006).

62. The Defendants are aware of their responsibility to provide workers compensation benefits to injured workers and therefore the Defendants' discipline, harassment and subsequent termination of the Plaintiff in retaliation for his use of workers compensation benefits is a retaliatory discharge.

63. As a result of Plaintiff's discipline and termination, he has suffered emotional harm, embarrassment, humiliation, mental anguish, and loss of self-esteem, as well as economic loss and damage to his reputation. Plaintiff also will seek entitlement to punitive relief for the malicious and reckless actions of Verizon.

## COUNT 8
## VIOLATION OF PENNSYLVANIA PUBLIC POLICY
### OSHA Reporting Retaliation and Wrongful Termination

64. Plaintiff incorporates herein the previous averments as if fully set forth.

65. It is a public policy of Pennsylvania to protect the public health, safety, and welfare of workers keeping them safe and free from harm.

66. In *Sourge v. Wright's Knitwear Corp.*, 832 F. Supp. 118 (E.D. Pa. 1993) and *Wetherhold v. Radioshack Corp.*, 339 F.Supp.2d 670 (2004) discharging an employee in retaliation for reporting to OSHA is a violation of public policy.

67. The Plaintiff sought assistance from his employer due to a workplace injury as more fully described above and herein.

68. The Plaintiff reported to OSHA as his duty was when OSHA investigated the accident-causing serious injury to the Plaintiff and Plaintiff was advised of his duty to participate in the OSHA investigation and report his actions.

69. His termination in July 2023 evinced both a temporal proximity and pattern of antagonism as to the cause of his termination when Verizon raised the issues of Plaintiff's injuries again at that time in the context of his reports to OSHA and allegation of violations of Verizon policy relating to the workplace accident.

70. The typical case involving wrongful discharge in violation of public policy is one where the "employee's termination is retaliatory and not grounded on a legitimate reason." *Goodwin v. Moyer*, 549 F. Supp. 2d 621, 636 (M.D. Pa. 2006).

71. The Defendants are aware of their responsibility to provide workers compensation benefits to injured workers and therefore the Defendants' discipline, harassment and subsequent termination of the Plaintiff in retaliation for his use of workers compensation benefits is a retaliatory discharge.

72. As a result of Plaintiff's discipline and termination, he has suffered emotional harm, embarrassment, humiliation, mental anguish, and loss of self-esteem, as well as economic loss and damage to his reputation. Plaintiff also will seek entitlement to punitive relief for the malicious and reckless actions of Verizon.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court grant relief on his Causes of Action as more fully specified below.

73. The Plaintiff prays that the Court award monetary relief as follows:

74. On his Causes of Action, order Defendants to pay equitable monetary relief and compensatory damages to the Plaintiff as are asserted under the ADA and/or PHRA, where and as applicable, and in an amount to be proven at trial.

75. The Plaintiff prays that the Court award him costs, expenses, and attorneys' fees, payable by Defendants where and as applicable, by determining that the Plaintiff is a prevailing party on his Causes of Action and thereupon awarding the Plaintiff his reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

76. Further, the Plaintiff prays that the Court award monetary relief as follows:

77. The Plaintiff prays that the Court order to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

78. The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period to assure that the Defendants have fully complied with the remedies to the greatest extent practicable.

79. The Plaintiff prays that the Court award all appropriate pain, suffering, humiliation, and punitive relief as are applicable under his claims.

80. The Plaintiff prays that the Court award such other and further relief as this Court

deems equitable and just.

Dated: November 4, 2024                    Respectfully submitted,

By: /s/ Jeremy A. Donham, Esquire
Jeremy Donham, Esquire (206980)
**DONHAM LAW**
714 Venture Dr. Suite 144
Morgantown, WV 26508
717.881.7855 (ph) 888.370.5177 (fax)
J.Donham@Donhamlaw.com

Jesse C. Markley (315758)
**MARKLEY LAW FIRM, LLC**
1350 Woodridge Dr.
Middletown, PA 17057
717.376.8403 (Phone)
Email: MarkleyLawFirm@gmail.com

Charles J. Hobbs (209321)
**THE HOBBS LAW FIRM**
256 E. Market Street
York, PA 17403
717.793-2398 (Phone)
Email: chobbs@thehobbslawfirm.com

***Co-Counsel for Plaintiff***